# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ELVIA NARCISA REA-CHILENO,

      Petitioner,

      v.                                               Case No. 2:26-cv-00117-KWR-JMR

PAMELA BONDI, *Attorney General*,
*U.S. Department of Justice*, *in her official capacity*,
KRISTI NOEM, *Secretary U.S. Department of Homeland Security*,
*in her official capacity*,
TODD M. LYONS, *Acting Director*, *U.S. Immigration and Customs Enforcement*, *in his official capacity*,
MARY DE ANDA-YBARRA, *Director*, *U.S. Immigration and Customs Enforcement*, *El Paso Field Office*, *in her official capacity*,

      Respondents.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas Corpus (**Doc. 1**). Having reviewed the Petition, exhibits, and the relevant law, the Court finds that the Petition is well-taken, and therefore, the Petition is **GRANTED in part**. The Court orders Respondents to hold an individualized bond hearing for Petitioner within **five (5) days** of the entry of this Order.

## BACKGROUND

Elvia Narcisa Rea-Chileno ("Petitioner") is a citizen of Ecuador and entered the United States on or about March 30, 2024. Pet. ¶ 2, Doc. 1. Petitioner was detained after her entry and released pursuant to an Alternative to Detention ("ATD") program. *Id.* ¶ 2. During her release, Petitioner filed an asylum application. *Id.* ¶ 27. Petitioner was served a Notice to Appear, placing

"her in Section 240 removal proceedings." *Id.* ¶ 3. On January 6, 2026, Petitioner was driving to pick up her daughter from school when she was arrested and detained. *Id.* ¶ 5.

On September 5, 2025, the Board of Immigration Appeals issued a decision holding that immigration judges lacked authority or jurisdiction to consider bond requests for any person who entered the United States without admission. *Matter of Yajure Hurtado*, 29 I. & N. 216, 225 (BIA 2025) ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens, like the respondent, who are present in the United States without admission."). As of the filing of this Petition, Petitioner is detained at Otero County Processing Center in Chaparral, New Mexico. *Id.* ¶ 6.

Petitioner has remained in custody without an opportunity to post bond or request conditional release since her detention has been classified as mandatory under 8 U.S.C. § 1225(b)(2)(A). Resp'ts' Resp. 2, Doc. 8. Petitioner requests that this Court issue a writ of habeas corpus requiring Respondents to immediately release Petitioner or, alternatively, provide her an individualized bond hearing pursuant to § 1226(a). Pet. ¶¶ 34–35.

The Court ordered Respondents to file an answer. Order to Answer, Doc. 2. The Court directed Respondents that their answer "must address the merits of the Petition and attach all relevant evidence [they] wish the Court to consider." *Id.* at 7. On February 19, 2026, Respondents filed their Response in which they incorporate arguments made in a prior case before this Court, *Munoz Teran v. Bondi*, No. 2:25-cv-01218-KWR-SCY, 2026 WL 161527, at *1 (D.N.M. Jan. 21, 2026). Resp. 4. In *Munoz Teran*, the respondents did not raise administrative exhaustion or jurisdictional bars. The Court declines to raise these issues *sua sponte*.

2

**LEGAL STANDARD**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A challenge to immigration detention is "properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

**DISCUSSION**

Petitioner contends she is in "custody [in] a violation of the Constitution and laws of the United States." Pet. ¶ 17. She argues that she is improperly detained pursuant to 8 U.S.C. § 1225(b)(2)(A) and that she is entitled to release or a bond hearing pursuant to 8 U.S.C. § 1226(a). *Id.* at 35. Respondents argue that § 1225(b)(2)(A) applies to Petitioner. Resp. 3–5. The Court finds that Petitioner, who was previously released under § 1226 authority, is currently detained under § 1226(a) and entitled to an individualized bond hearing before an immigration judge.

I. **Whether mandatory detention under § 1225(b)(2)(A) or discretionary detention under § 1226(a) applies.**

This Petition hinges on whether § 1225(b)(2) or § 1226(a) governs Petitioner's detention. Respondents argue that § 1225(b)(2)(A) governs Petitioner's detention and she is not entitled to a bond hearing. Resp. 2. Petitioner contends that DHS had already released her under § 1226(a) authority, and her release must remain within that statutory scheme. Pet. ¶ 97. After a plain reading of § 1225(b)(2)(A), the Court finds that Petitioner cannot be "seeking admission" as required for § 1225(b)(2)(A) to apply. Thus, § 1226(a) governs Petitioner's detention.

3

When interpreting a statute, courts first "examine the statute's plain text" and "[a]bsent ambiguity, [the] analysis ends there." *United States v. Koerber*, 10 F.4th 1083, 1112 (10th Cir. 2021). Should the analysis continue, the Court considers the "language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1381 (10th Cir. 2009) ("We also take into account the 'broader context of the statute as a whole' when ascertaining the meaning of a particular provision." (citation omitted)). Courts also consider traditional canons of statutory interpretation. *Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054, 1062 (10th Cir. 2011). Generally, the Court considers non-textual evidence bearing on Congress's intent or purpose, such as legislative history, only if the statutory language is ambiguous. *See, e.g.*, *United States v. Husted*, 545 F.3d 1240, 1247 (10th Cir. 2008) ("[I]t is a longstanding principle that absent ambiguity we cannot rely on legislative history to interpret a statute.").

Under the Immigrant and Nationality Act ("INA"), two statutes generally govern a noncitizen's detention pending a final order of removal: §§ 1225 and 1226. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1225, which mandates detention and does not afford a bond hearing, applies when "an applicant for admission" is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A). Section 1226 provides that a noncitizen "may be arrested and detained" pending a removal decision. § 1226(a). Under § 1226(a), the Attorney General may detain the arrested noncitizen, release them on bond, or release them on conditional parole. Section 1226(c) mandates detention for a noncitizen that is (1) present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General and (2) "is charged with, is

4

arrested for, is convicted of, admits having committed, or admits" to committing certain criminal acts. 8 U.S.C. § 1226(c)(1)(E).

In sum, immigration law authorizes the detention of "certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (quoting *Jennings*, 583 U.S. at 289). For Petitioner's detention to be governed by § 1225(b)(2), the Court must find that Petitioner is (1) an "applicant for admission," (2) who is "seeking admission," and (3) "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A).

The Court begins with the plain text of the phrase "seeking admission." *See Koerber*, 10 F.4th at 1112. Since "seeking" is statutorily undefined, the Court will first consider the word "admission." "Admission" is statutorily defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). "Entry" is statutorily undefined. Respondents do not assert that the word "entry" has any unusual, technical meaning, and therefore, the Court will apply its "ordinary, contemporary, common meaning." *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017). "Entry" ordinarily means "[t]he action or an act of entering a place, area, building, etc." *Entry*, Oxford English Dictionary, https://www.oed.com/dictionary/entry_n?tab=meaning_and_use#5515547 (last visited Feb. 25, 2026); *see also Entry*, *Black's Law Dictionary* (12th ed. 2024) ("*Immigration*. Any entrance of an alien into the United States, whether voluntary or involuntary."). Thus, the word "admission," as used in § 1225(b)(2)(A), refers to a noncitizen's lawful act of physically entering the United States after inspection and authorization by an immigration officer.

5

Turning to the statutorily undefined word "seeking," in this context, it ordinarily means trying to obtain something or trying to bring about or effect. *Seek*, Oxford English Dictionary, https://www.oed.com/dictionary/seek_v#23724107 (last visited Feb. 25, 2026). In choosing the present participle "seeking," courts should give effect to Congress's verb choice and find that "seeking" signals present and continuous action. *Carr v. United States*, 560 U.S. 438, 448 (2010) ("Consistent with normal usage, we have frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach."); *see also Present Participle*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/present%20participle (last visited Feb. 25, 2026). Therefore, the Court finds that the plain reading of the phrase "seeking admission" demonstrates that § 1225(b)(2)(A) applies to noncitizens who are presently trying to lawfully and physically enter the United States. Section 1225(b)(2)(A) does not apply to noncitizens, like Petitioner, who have lived in the United States for an extended duration and are not presently seeking lawful entry into the United States.

If the Court were to accept Respondents' interpretation, the phrase "seeking admission" would be rendered superfluous, "violating one of the cardinal rules of statutory construction." *Castañon-Nava*, 161 F.4th at 1061. Courts are to presume that an interpretation of a provision is incorrect if it "would render another provision superfluous." *Id.* (quoting *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010)). This presumption is "strongest when an interpretation would render superfluous another part of the same statutory scheme," as would occur here if the Court adopts Respondents' interpretation. *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013).

Further, another section in § 1225 provides that "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3). The Supreme Court has noted

that the word "or" is "almost always disjunctive, that is, the words it connects are 'to be given separate meanings.'" *United States v. Woods*, 571 U.S. 31, 45 (2013) (citation omitted). Additionally, the phrase "or otherwise" signals that the phrase "applicants for admission" has a different meaning than "seeking admission." *Or Otherwise*, Oxford English Dictionary, https://www.oed.com/dictionary/otherwise_n?tab=meaning_and_use#33058328 (last visited Feb. 13, 2026) ("In another way or ways; in a different manner; by other means; in other words; differently."). Therefore, a plain reading of § 1225(a)(3) indicates that the phrases "applicants for admission" and "seeking admission," as used throughout § 1225, do not have the same meaning.

Respondents' interpretation would render recent amendments to § 1226(c) superfluous. As amended in 2025, § 1226(c)(1)(E) requires detention for a noncitizen who is (1) inadmissible as an alien present in the United States without being admitted or paroled, and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits" to committing certain crimes. Respondents' interpretation would require every noncitizen that is present in the country without being admitted or paroled be detained under § 1225(b)(2)(A). Such an interpretation would render the recent § 1226(c)(1)(E) amendment superfluous in that detention would be required regardless of the noncitizen's criminal involvement.

The Supreme Court, in dicta, has recognized that § 1225(b) generally applies "to aliens seeking entry into the United States" and that § 1226 "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 297, 303. The *Jennings* Court further noted that § 1226(a) creates a default rule for noncitizens present in the United States "by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings," and also permitting "the Attorney General to release those aliens on bond." *Id.* at

7

303. Thus, the Supreme Court's construction of §§ 1225(b) and 1226(a) align with this Court's reading of the phrases "applicant for admission" and "seeking admission."

Applying the above statutory interpretation to these facts, the Court finds that Petitioner is not "seeking admission" under § 1225(b)(2)(A). Petitioner has been living in the United States for over a year while enrolled in an ATD Program. Pet. ¶ 81–82. Neither Petitioner nor Respondents put forth any facts suggesting that Petitioner was "seeking admission" at the time of her arrest. Rather, Petitioner was already released on parole subject to supervision and had been on her way to pick up her daughter from school when Respondents arrested her. *Id.* ¶ 5. Accordingly, the Court finds that Petitioner is detained pursuant to § 1226(a), not § 1225(b)(2)(A).

II. **The Court finds that a bond hearing, rather than immediate release, is the appropriate remedy.**

Petitioner requests immediate release or, in the alternative, a bond hearing. Pet. 33–35. Petitioner argues that "[n]othing in her circumstances has changed since" her release under the ATD Program and that a "bond hearing would be an empty formality serving no legitimate purpose." *Id.* ¶ 100. To avoid taking away Respondents' discretion afforded by § 1226(a), the Court concludes that a bond hearing is warranted.

Section 1226(a) affords Respondents discretion to detain, release on bond, or parole a noncitizen. Generally, the release or bond decision is discretionary. 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.").

Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). A federal court is vested with "the largest power to control and direct the form of judgment to be entered in cases brought up before it on *habeas*

8

*corpus*." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). In issuing a writ of habeas corpus, a federal court has the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243. Assuming that the Court has the authority to order Petitioner's immediate release, the Court, in its discretion, orders Respondents to provide Petitioner an individualized bond hearing so that she may receive the process she is due under the statute. *See* § 1226(a) (providing that the Attorney General may continue to detain a noncitizen or release her on bond or parole pending a decision of removal).

Petitioner bears the burden of proof to demonstrate that she is entitled to relief or a remedy, including whether the burden should be placed on the Respondents to justify her detention at a bond hearing. *See* 28 U.S.C. § 2241; *see Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) ("[I]t was error for the District Court to effectively impose on the Government the burden of proving that [petitioner] was *not* 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citing 28 U.S.C. § 2241(c)(3)). Petitioner bears the burden to demonstrate a "deprivation of rights leading to unlawful detention" under § 2241. *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009); *see also Smith v. Workman*, 550 F.3d 1258, 1273 (10th Cir. 2008) (noting that, in the context a *Brady* violation, the petitioner "bears the burden of showing that the prosecution suppressed material evidence favorable" to the petitioner).

Petitioner does not argue that any due process violation requires her release over a bond hearing.[1] *See* Pet. ¶ 117–122. Rather, Petitioner cites a district court case, *Pichardo Medina v.*

---

[1] The Court recognizes that Petitioner argues for release over a bond hearing in her Reply, Pet'r's Reply 4–9, Doc. 9, but her Petition does not address why a bond hearing would be an inadequate form of relief. To the contrary, Petitioner requests release and, "[i]n the alternative," an "order requiring Respondents to set a bond hearing." Pet. 34–35. Arguments "raised for the first time in a reply brief are generally deemed waived." *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011); *Okland Oil Co. v. Knight*, 92 F. App'x 589, 607 (10th Cir. 2003) (noting that "district courts are not required to address arguments and allegations raised for the first time in a reply brief").

*Hermosilla*, No. 3:25-cv-02233-MC, 2025 WL 3712271, at *6 (D. Or. Dec. 22, 2025), for the proposition that "given newly binding BIA precedent, there is little indication Petitioner would receive adequate process before an IJ." Pet. ¶ 99. Since the Court orders a bond hearing pursuant to § 1226(a) and orders that Petitioner shall not be denied parole or bond on the basis of § 1225, Petitioner will receive the process she is due.

Petitioner also examines her due process claim under the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), but her analysis does not demonstrate why a due process violation requires her release as opposed to a bond hearing. Pet. ¶¶ 118–122. Rather, her due process analysis is directed at demonstrating an alleged violation of "the core guarantees of procedural due process." *Id.* ¶ 122. The Court will not *sua sponte* consider whether her due process claim warrants immediate release as opposed to a bond hearing. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *see also Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (noting that a court has no obligation to make arguments or perform research on behalf of litigants). Accordingly, the Court finds that the proper remedy is an individualized bond hearing pursuant to § 1226(a).

---

While an exception exists for new arguments "offered in response to an argument raised in the [appellee's] brief," *see In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1119 (10th Cir. 2015), no new argument was made here, *see* Resp. 1–5. Respondents maintained their position that § 1225(b)(2)(A) controls Petitioner's detention which mandates detention and does not afford a bond hearing. *Id.* at 3. Petitioner argues that Respondents did not address her argument for release. Reply 4. However, Respondents position that § 1225(b)(2)(A) controls is sufficient argument that release is unwarranted. Further, Petitioner's argument that a bond hearing is inadequate does not qualify as a new argument offered in response to an argument made in Respondents' brief as their argument was limited to why § 1225(b)(2)(A) applies. Accordingly, the Court will not consider the newly raised arguments in Petitioner's Reply as to why a bond hearing is now inadequate.

**III.     This opinion and judgment should not be construed as addressing 8 U.S.C. § 1231, if that provision becomes applicable.**

The Petition presents a narrow issue, whether Petitioner's detention is governed by § 1225 or § 1226 *pending a decision on her removal*. Neither party addresses whether § 1231 applies and nor does this Order.

Once an order of removal becomes final, § 1231 governs. *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 574 (2022) ("After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day removal period, during which the Government 'shall' detain the noncitizen."). Section 1231 governs the detention of noncitizens "during" and "beyond" the "removal period." 8 U.S.C. § 1231(a)(2)–(6). Generally, the Attorney General shall remove a noncitizen within 90 days, a time frame known as the "removal period." *Id.* § 1231(a)(1)(A). The removal period begins once a removal order becomes "administratively final," *id.* § 1231(a)(1)(B), meaning the order has been affirmed by the BIA or the time for seeking review has expired, *id.* § 1101(a)(47)(B). *Riley v. Bondi*, 606 U.S. 259, 267 (2025) ("An order of removal becomes final at the earlier of two points: (1) 'a determination by the [BIA] affirming such order,' or (2) 'the expiration of the period in which the alien is permitted to' petition the BIA for review of the order.") (citing § 1101(a)(47)(B)). Detention is mandatory during the removal period. § 1231(a)(2).

Neither party contends that § 1231 applies here. Neither party alleges that removal proceedings have become final. The Court determines the narrow issue of whether § 1225 or § 1226 applies. The Court's Order and Judgment do not opine on whether or when in the future Petitioner may be detained pursuant to § 1231.

## IV.     <u>The Court need not rule on Petitioner's remaining claims.</u>

Petitioner asserts violations of due process, the APA, and the INA. Pet. ¶¶ 114–130. Because the Court grants habeas relief, the Court need not address Petitioner's additional claims or declaratory relief. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (finding it unnecessary to address an additional claim in a habeas petition after granting full relief on one claim because "any relief [petitioner] could obtain on that claim would be cumulative"); *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (stating that "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them"); *Scott v. Mullin*, 303 F.3d 1222, 1224 (10th Cir. 2002) (declining to address the remaining claims in a habeas petition after already granting habeas relief on one claim).

## V.     <u>Costs and fees under the EAJA.</u>

Petitioner requests an award of "reasonable fees and costs pursuant to the Equal Access to Justice Act." Pet. 35. In light of recent Tenth Circuit precedent, the Court finds that it may consider Petitioner's request for costs provided that Petitioner follows proper EAJA procedure.

The EAJA provides for the following procedure:

> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The Tenth Circuit recently held that the EAJA "unambiguously authorize[s] fees in habeas actions challenging immigration detention." *Daley v. Ceja*, 158 F.4th 1152, 1159, 1166 (10th Cir. 2025).

A fee award is required if (1) the petitioner prevails, (2) the Government's position was not "substantially justified," and (3) there are no special circumstances rendering an award of fees unjust. *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting § 2412(d)(1)(A)). While fees are authorized, the EAJA requires that Petitioner, "within thirty days of final judgment in the action, submit to the court an application for fees or other expenses" and allege that "the position of the United States was not substantially justified." § 2412(d)(1)(A), (B). Upon filing this application, the Government must justify its position in any underlying proceedings and district court litigation. *See Hackett*, 475 F.3d at 1170.

Since the Court grants Petitioner habeas relief, should Petitioner pursue costs and fees, she is instructed to file an EAJA application following the appropriate procedure.

## CONCLUSION

The Court finds that Petitioner's detention is governed by § 1226(a), not § 1225(b)(2)(A). Therefore, the Petition (Doc. 1) is granted. Respondents are directed to arrange an individualized bond hearing pursuant to § 1226(a) for Petitioner within **five (5) days** of the entry of this Order. **Respondents shall not deny Petitioner bond or parole on the basis that § 1225(b) requires detention.** However, the Court makes no determination whether or when § 1231 will apply to Petitioner's detention. The parties are ordered to file a status report within **seven (7) days** of the entry of this Order. The Court will enter a separate judgment.[2]

---

[2] The Court need not delay entry of judgment to wait for Respondents to comply with the Court's order. The Court "always retains jurisdiction to enforce its lawful judgments, including habeas judgments." *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010); *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992) (explaining that district court has authority to enforce its habeas judgment).

**IT IS THEREFORE ORDERED** that Petitioner's Petition (Doc. 1) is hereby **GRANTED** for reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Respondents shall provide Petitioner an individualized bond hearing before an immigration judge pursuant to § 1226(a), as opposed to § 1225(b), within **five (5) days** of the entry of this Order. **Petitioner shall not be denied bond or parole on the basis of § 1225.**

**IT IS FINALLY ORDERED** that the parties are directed to file a joint status report within **seven (7) days** of the entry of this Order.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE